**MGM PRODUCTIONS GROUP, INC., Petitioner–Appellee,**

v.

**AEROFLOT RUSSIAN AIRLINES, Respondent–Appellant.**

No. 03–7561.

United States Court of Appeals, Second Circuit.

Feb. 9, 2004.

Fred G. Bennett, Quinn Emanuel Urquhart Oliver & Hedges, LLP, New York, N.Y. (Jeffrey A. Conciatori, Robert C. Juman, on the brief), for Petitioner–Appellee.

Bruce E. Yannett, Debevoise & Plimpton, New York, N.Y. (Carl Micarelli, Scott Ruskay–Kidd, on the brief), for Respondent–Appellant.

Present: KEARSE, CALABRESI, and KATZMANN, Circuit Judges.

## SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED.**

Petitioner–Appellee MGM Productions Group, Inc. ("MGM"), a California corporation, is the assignee of a November 29, 2002 award ("Award") of over $13 million plus interest and costs, obtained by Russo International Venture ("Russo"), a New York corporation, against Aeroflot Russian Airlines ("Aeroflot"), in an arbitration held in Stockholm, Sweden, pursuant to a 1992 agreement ("Agreement") between Russo and Aeroflot. The Award compensated Russo for Aeroflot's breach of the Agreement, under which Russo provided consulting services to Aeroflot in connection with the Russian airline's leasing of airplanes and other equipment to Iran Air.

MGM filed suit in federal district court, seeking confirmation of the arbitral award, pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, open for signature, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ("New York Convention"). Aeroflot opposed confirmation, arguing that the Award fell under the "public policy exception" in Article V(2)(b) of the New York Convention, because it compensated Russo for Aeroflot's non-performance of an Agreement whose provisions allegedly violated the Iranian Transactions Regulations ("ITRs"), 31 C.F.R. § 560.101 *et seq.*, adopted by the Office of Foreign Assets Control of the Department of the Treasury pursuant to Executive Orders issued by the President of the United States under the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701–1706. [Blue 4] The district court confirmed the Award, and we affirm.

The arbitrators considered Aeroflot's argument that the Agreement violated the ITRs promulgated in 1995, and found that since the Agreement provided only for transactions between Russo and Aeroflot, it did not contravene the regulations. We accord great deference to the arbitrator's factual findings and contractual construction. *See Europcar Italia, S.p.A. v, Maiellano Tours, Inc.*, 156 F.3d 310, 316 (2d Cir.1998) ("[A]n arbitration award cannot

be avoided solely on the ground that the arbitrator may have made an error of law or fact."). Even if, in these circumstances, we did not, it would be, at most, doubtful that the Agreement violated the 1995 ITRs. And, as such, the Agreement cannot be said to violate fundamental public policy. *See Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (RAKTA)*, 508 F.2d 969, 973–74 (2d Cir.1974).

Aeroflot also argues that performance of the Agreement after August 20, 1997, the date that amended ITRs went into effect, would have been illegal, and that MGM should not be compensated for breach of the Agreement when its performance by MGM's predecessor in interest would have violated U.S. public policy. We need not reach this question, however, since Aeroflot breached the Agreement before the 1997 ITRs went into effect. We cannot know, therefore, whether the parties would subsequently have amended their Agreement to avoid potential violations of the regulations, were it not for Aeroflot's breach. Under these circumstances, Aeroflot cannot now sustain an argument that enforcement of the Agreement would violate U.S. public policy.

We have considered all of the Appellant's arguments, and found them to be without merit. Accordingly, we AFFIRM the judgment of the district court.